**Revised May 20, 2002**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-30287

_____

SHIRLEY A. RAMSEY,

Plaintiff-Appellant,

versus

WILLIAM J. HENDERSON,
POSTMASTER GENERAL

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Middle District of Louisiana
_____

March 29, 2002

Before POLITZ, STEWART, and CLEMENT, Circuit Judges.

CLEMENT, Circuit Judge:

Shirley Ramsey ("Ramsey") appeals an adverse summary judgment in her claims against her employer, the United States Postal Service ("USPS"), in which she asserts claims under Title VII of the Civil Rights Act for race discrimination and harassment.  We affirm the district court's determination that summary judgment was appropriate.

## I.  Facts and Proceedings

Ramsey has been employed by the USPS since 1981.  She works at the General Mail Facility on Blue Bonnet Road in Baton

Rouge, Louisiana. She claims that she has been harassed roughly since the conception of her employment at the USPS. The source of the harassment is Ramsey's relationship with her African American co-employees. Ramsey, a woman of white appearance but of multiple ethnicities[1], has suffered harassment at the hands of her African American co-employees. The harassment increased after Ramsey began dating an African American male. When Ramsey became an expedited mail clerk in 1994 and began working under Lucile Porter, Porter treated her more harshly than Ramsey's African American counterparts. Relations between Ramsey and Porter were amicable for the first six months of her employment. Shortly after this, their relationship deteriorated. Porter's treatment of Ramsey was erratic. For weeks at a time, Porter would be kind and then turn hateful. Ramsey felt belittled and humiliated by Porter's yelling and sharp looks. Porter called her a liar and a disloyal employee in front of co-workers and customers.

On May 8, 1998, Ramsey made a request for pre-complaint counseling, as required by the Federal Regulations, based on Porter's harassment. The paperwork was sent to Ramsey for her to fill out her complaint against Porter; however, Ramsey never submitted the paperwork. She claims that she hoped that the situation could be resolved without resorting to a formal

---

[1] Ramsey states that she is of Spanish, Chinese, American Indian, and Irish origin.

complaint. However, the situation was never resolved.

On December 16, 1998, Ramsey had an altercation with a co-worker, Mr. Marioneaux. The altercation stemmed from a previous order by Porter that Ramsey not get her mail but go straight to her desk when she arrived at work. On December 16, Marioneaux yelled at Ramsey for refusing to pick up her mail. He slapped a stack of papers on Porter's desk during the quarrel. At this point, Porter entered the scene and told Marioneaux to stop yelling at Ramsey. The altercation visibly upset Ramsey, making her cry and shake. Although Porter ended the altercation between Marioneaux and Ramsey, Ramsey claims that Porter enjoyed it and smiled while Marioneaux was yelling at Ramsey. Ramsey subsequently requested to meet with a union steward to which Porter allegedly replied "this really got to you didn't it, I can see it in your eyes. You can call Linda Hayes (the union steward), but I don't think she's in." On December 17, 1998, Ramsey had difficulty concentrating at work and filled out a request form for a leave of absence. Porter refused to sign and asked Ramsey to talk to her about the incident of the previous day. Ramsey indicated that she did not want to talk about it but rather simply wanted to go home. Ramsey left work alleging she was having a nervous breakdown and never returned to the mail facility. She requested informal counseling with the EEO office on January 29, 1999 and filed a

3

formal complaint of discrimination on April 15, 1999.[2]

Ramsey filed her Complaint on December 10, 1999 alleging race discrimination and retaliation in violation of Title VII. The USPS filed a motion to dismiss on May 31, 2000 alleging lack of jurisdiction as to the retaliation claim as well as failure to state a prima facie case of a hostile work environment. The district court converted the motion to dismiss into a motion for summary judgment and ordered additional briefing. On December 13, 2000, the district court dismissed Ramsey's retaliation claim for lack of subject matter jurisdiction[3] and dismissed the discrimination claim for failure to state a prima facie case. Ramsey filed a motion to amend the judgment which was denied by the district court. Ramsey timely filed a notice of appeal as to the hostile work environment claim.

## II. Discussion

### A.  Standard of Review

We review a district court's decision to grant summary

---

[2] The agency identified the scope of the complaint as a claim of "continuing harassment and a hostile work environment culminating in your mail not being brought to your desk on December 16, 1998, your supervisor refusing to sign your leave slip on December 17, 1998, and your supervisor allowing a co-worker to yell at you during a meeting on December 17, 1998." While Ramsey objected, requesting additional prior conduct be included in the claim, the agency refused and Ramsey did not appeal the decision to the EEOC.

[3] The district court dismissed the retaliation claim for failure to exhaust administrative remedies. This issue was not raised on appeal.

4

judgment *de novo*.  <u>Walker v. Thompson</u>, 214 F.3d 615, 624 (5th Cir. 2000).  Summary judgment is appropriate only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In reviewing a motion for summary judgment, the evidence is viewed in a light most favorable to the non-moving party, drawing all reasonable inferences in its favor.  <u>St. Paul Mercury Ins. Co. v. Williamson</u>, 224 F.3d 425, 440 n. 8 (5th Cir. 2000) (citing <u>Lowrey v. Texas A & M University System</u>, 117 F.3d 242, 247 (5th Cir. 1997).

**B. Analysis**

The district court denied Ramsey's hostile work environment claim based on its determination that all of her claims were time barred except for those occurring on December 16-17, 1998.  The district court found that her claim could not be based on a continuing violation theory because she was aware of the alleged harassment yet chose to withstand it.[4]  As a result, the court concluded that all but one incident was time barred for occurring "outside the forty-five day period from the date of her initial contact with the agency's EEO office."  After a motion for a new trial was filed by Ramsey, the court again dismissed her claim for failure to allege conduct that was "sufficiently severe or pervasive to be actionable" under <u>Harris v. Forklift Systems, Inc.</u>

---

[4] Ramsey requested the paperwork for informal counseling on at least one occasion in 1998 but never filed the request.

5

510 U.S. 17 (1993).

Ramsey alleges it was error for the district court to dismiss her claim under a continuing violation theory as her theory was based not on a continuing violation but on a "severity" theory. After reviewing the record, it is not clear from Ramsey's documents on what theory her claim was based. What is clear is that the actionable period included only one incident. Ramsey argues that the time barred events cited in her Complaint and subsequent motion were relevant background information to determine the severity of the harassing conduct. We agree. The question remains whether, after reviewing the previous discriminatory conduct, Ramsey has made a prima facie case of harassment based on a hostile work environment. We conclude that she has not.

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. In order to establish a hostile working environment claim, Ramsey must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 353(5th Cir. 2001); Jones v. Flagship Int'l, 793 F.2d 714, 719-720 (5th Cir. 1986). For harassment on the basis of race to affect a term, condition, or privilege of employment, as required

6

to support a hostile work environment claim under Title VII, it must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris, 510 U.S. at 21, *quoting*, Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986).

In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Walker v. Thompson, 214 F.3d 615,625 (5th Cir. 2000),*quoting*, Harris, 510 U.S. at 23.

We agree with the district court that the conduct to which Ramsey objects does not rise to the level of race discrimination based on a hostile work environment; however, the district court should have considered the prior relevant conduct alleged by Ramsey in making its determination. As the Supreme Court has recently stated, "workplace conduct is not measured in isolation." Clark County School District v. Breeden, 532 U.S. 268, 270 (2001). For a hostile working environment to be deemed sufficiently hostile, all of the circumstances must be taken into consideration. Discriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts. United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977); *See also*

7

Rutherford v. Harris County, 197 F.3d 173 (5th Cir. 1999); Hebert v. Monsanto Co., 682 F.2d 1111 (5th Cir. 1982); Anderson v. Reno, 190 F.3d 930, 936 (9th Cir. 1999).  Viewing the facts in a light most favorable to Ramsey, and, after considering the prior alleged acts of harassment, we conclude that Ramsey failed to state a prima facie case of a hostile working environment.

As an initial matter, we distinguish between the harassing conduct occurring within the actionable period and that which can only be viewed as relevant background conduct.  As a federal employee, the Federal Regulations require Ramsey to follow certain procedures before filing a Title VII suit.  The first step in filing an EEOC complaint is that an aggrieved employee must contact an agency EEO counselor within 45 days of the alleged discriminatory conduct requesting informal counseling.[5]  Ramsey filed her informal counseling request on January 26, 1999.  Accordingly, the actionable period was from December 12 through December 17, 1998.  The only actionable incidents which occurred during this time were on December 16 and again on December 17, 1998 when Ramsey ultimately left the USPS.  All other alleged conduct by

---

[5] 29 C.F.R. §1614.105 provides: Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.  An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory.

Ramsey can only be considered as relevant background conduct to determine whether the harassment was sufficiently severe so as to cause an abusive work environment.

The December 16, 1998 incident arose between Ramsey and her co-worker Mr. Marioneaux. Prior to this incident there were no allegations by Ramsey that Marioneaux harassed her because of her race nor is there any allegation that the December 16, 1998 incident was racially motivated. The conduct to which Ramsey complains involves Marioneaux refusing to bring her mail to her. In doing so, he slapped his hands down on Porter's desk and yelled at Ramsey. During the course of this exchange, Porter reprimanded Marioneaux and ordered him to stop yelling at Ramsey. However, prior to ending the tirade, Porter smiled which Ramsey perceived as her enjoyment of the abuse projected on her. Ramsey was visibly shaken by the incident and requested that Porter sign a leave form for her the next day. Porter did not sign the form, asking Ramsey to stay so that they could discuss the incident of the previous day. Ramsey left the office and never returned to work. While workplace conduct cannot be measured in isolation, we conclude that this incident does not amount to discriminatory employment.

The record is rife with vague assertions of racial animus dating back to Ramsey's initial employment at the USPS. However, other than assertions that her supervisor, Lucile Porter, discriminated against her for dating an African American male, there are no specific allegations of racial discrimination against

9

any other employees.  Ramsey alleges that she "suffered ongoing racial harassment from black females," but points to no concrete examples.  Ramsey explains that the harassment increased when she began dating an African American and subsequently had a child with him but again gives no concrete examples beyond mere conclusory assertions.  While claiming that the racial harassment became extreme after beginning work under Porter, the only example she cites is reference to a remark where Porter made a derogatory comment about Ramsey.  However, this statement was not heard by Ramsey nor does Ramsey establish to whom the remark was made.  This Court has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

While the record clearly indicates that Porter did not approve of Ramsey's relationships with African American men, Ramsey's allegations fall far short of setting forth the requisite elements of a prima facie claim of a hostile working environment.  The prior incidents of racial harassment falling outside of the actionable period are not so severe or pervasive as to cause an abusive working environment when taken in conjunction with the incident occurring within the actionable period.  The incident between Ramsey and Marioneaux occurring on December 16, 1998 in no way involved racial harassment.  Additionally, Porter's intervention

in the scene shows that immediate remedial action was taken. The prior conduct of the USPS may have included discriminatory acts; however, this conduct is not actionable under Title VII. Such prior conduct "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." <u>Evans</u>, 431 U.S. at 558. The incident occurring within the actionable time period in no way involves racial discrimination, and her sporadic allegations of race discrimination cannot be the basis of a Title VII claim.

### III. Conclusion

While it was error for the district court not to consider acts of discrimination falling outside of the actionable period as relevant background information, its determination that Ramsey failed to establish a prima facie case of a hostile work environment in violation of Title VII was correct.

AFFIRMED.

11