# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-40387
Summary Calendar

GREGORIO GARZA, JR

Plaintiff-Appellant

v.

LAREDO INDEPENDENT SCHOOL DISTRICT

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:04-CV-137

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Gregorio Garza, Jr. ("Garza"), a United States citizen of Mexican heritage, filed suit against Laredo Independent School District ("LISD") alleging employment discrimination based on national origin and retaliation in violation of Title VII, 42 U.S.C. § 2000e. The district court granted LISD's motion for summary judgment, and Garza filed this appeal. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Garza was born in Laredo, Texas, and is a United States citizen residing in Nuevo Laredo, State of Tamaulipas, Mexico. Garza has worked for the LISD since September 1993. This suit arises out of incidents that occurred while Garza was employed as a teacher at the Vidal M. Trevino School of Communication and Fine Arts ("VMT"), a magnet high school located in Laredo, Texas.

Over the course of several years, Garza experienced several instances of what he considered to be "different treatment" which resulted in an alleged hostile work environment. Garza provides numerous examples of disparate treatment. For example, when new computers and printers were issued, Garza was not provided one and he only had access to a computer and printer purchased in 1993. VMT also stopped purchasing cartridges for the printer and Garza bought his own. In addition, VMT continually increased the number of students in Garza's class. He believes that his classes "were probably the largest in the school [and] probably in violation [of] fire safety norms." Garza also states that his classroom was not cleaned for days at a time or over school breaks.

After several requests for intervention, Garza presented his concerns at the LISD Board of Directors meeting on October 17, 2002. Garza was interviewed by the Assistant Superintendent a few days later. Garza then suffered from what he characterizes as "varied forms of retaliation." For example, the current VMT principal issued a letter of warning to Garza regarding a failure to submit attendance rosters. At the time the letter of warning was given to Garza, negative accusations were made regarding his ability to teach courses. Garza also states that members of the staff, separately and in conjunction with local administration, displayed signs that portrayed him negatively and held meetings where they blamed Garza as a "traitor." In addition, a survey being conducted by one of Garza's students was confiscated even though other classes conducted surveys without incident. Finally, VMT attempted to cancel the Hispanic Heritage Festival, an event Garza organized for over thirteen years.

After these incidents, Garza attempted to transfer from VMT and applied for two positions at different schools within the LISD. In addition, Garza requested to teach a college level psychology course at VMT which was denied. Garza had previously taught courses at a nearby community college.

On January 20, 2004, Garza filed a discrimination claim against LISD with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR"). Garza was issued a right to sue letter in August 2004. Proceeding pro se, Garza filed suit against LSID on September 22, 2004. Garza claimed he was discriminated against based on national origin and was retaliated against in violation of Title VII and its state equivalent, the Texas Commission on Human Rights Act. Specifically, Garza claimed that LISD (1) discriminated against him and subjected him to different terms, conditions, and unfair treatment on account of his "Hispanic, Mexican national origin," (2) subjected him to an environment that negatively impacted his work conditions, and (3) retaliated against him after he complained to LISD's Board of Trustees.

On June 7, 2006, LISD filed a motion for partial summary judgment. On February 23, 2007, the magistrate judge denied the motion without prejudice due to the parties' use of the incorrect legal standard on what constitutes an adverse employment action. On March 8, 2007, the district court issued an order allowing LISD to file an updated summary judgment motion. The updated summary judgment motion was granted by the district court on March 10, 2008. Garza appeals.

## II. NATIONAL ORIGIN DISCRIMINATION AND RETALIATION CLAIMS

### A. Standard of Review

This Court reviews the district court's grant of summary judgment de novo, applying the same legal standard as the district court in the first instance. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Summary judgment is proper when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In making a determination as to whether there is a genuine issue of material fact, this Court considers all of the evidence in the record but refrains from making credibility determinations or weighing the evidence. Turner, 476 F.3d at 343 (citation omitted). We draw all reasonable inferences in favor of the nonmoving party, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Id. (citations omitted). "Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." Id. (citation omitted).

## B. Garza's National Origin Claim

Under Title VII it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Garza has not provided direct evidence of discrimination, therefore, his Title VII claim based on circumstantial evidence is analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Turner, 476 F.3d at 345. Garza must establish, by a preponderance of the evidence, a prima facie case of discrimination in order for the court to deny LISD's motion for summary judgment.

Garza may establish a Title VII violation based on race or national origin discrimination creating a hostile work environment. To establish a prima facie case, Garza must prove that he (1) is a member of a protected class, (2) was subjected to unwelcome harassment, (3) the harassment complained of was based on race or national origin, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) the employer knew or should have

4

known of the harassment in question and failed to take prompt remedial action. See Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

Garza fails to establish a prima facie case of discrimination. Garza is a member of a protected class–he is Mexican-American and continues to have strong ties to Mexico. Drawing all reasonable inferences in favor of Garza, we find that he was subjected to unwelcome harassment. Garza does not, however prove that the harassment was based on his race or national origin.

Garza provides numerous examples of discriminatory conduct, but does not explain how this conduct was motivated by his national origin or race. We note that this Court construes the submissions of pro se litigants broadly in deference of their status. See Royal v. Tombone, 141 F.3d 596, 599 (5th Cir. 1998). This liberal construction, however, does not alleviate Garza's burden to present evidence in support of the claim that he suffered harassment because of his race or national origin. We find nothing in Garza's brief that allows the Court to make this inference. In addition, Garza's deposition testimony demonstrates that while he believed and stated that he was treated differently from other teachers, he did not attempt to argue that other Hispanics were treated differently from white employees. Garza specifically stated that he could "only account for the consequences or treatment that [he] suffered." LSID's counsel pressed the point and specifically asked if one of VMT principals treated Garza differently because he was Hispanic. Garza stated

> I cannot prove intrinsically that he treated me as inferior. All I can tell you is that because I'm from across. [sic] He knew that I was a U.S. citizen or something. But all I can tell you is that his actions reflected an unequal treatment or a disparate treatment in comparison to the rest of the faculty.

We, again, draw all reasonable inferences in favor of Garza, but his testimony does not demonstrate that he was harassed because of his race or national origin. Even assuming Garza was treated differently from all other

faculty members, that does not indicate that Garza was treated differently because of his race or national origin.

Garza also fails to demonstrate that the harassment affected a term, condition, or privilege of his employment.

> For harassment on the basis of race [or national origin] to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"

Ramsey, 286 F.3d at 268 (citation omitted).  This Court must look at the totality of the circumstances when determining whether an environment is hostile or abusive.   Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999).   "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."  Id.  The Court may consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Ramsey, 286 F.3d at 268 (citation omitted).

Again, drawing all reasonable inferences in Garza's favor, the totality of the circumstances presented does not evidence a level of harassment on the basis of race or national origin that affected a term, condition, or privilege of employment. The incidents complained of by Garza occurred over several years, were not severe, were not physically threatening or humiliating, and there is no evidence that the harassment interfered with Garza's work performance.  While the Court does not doubt that Garza found the conduct subjectively offensive, the conduct does not rise to the level necessary to establish a hostile work environment claim.

Garza fails to demonstrate a prima facie case of national original discrimination, and we AFFIRM the district court's grant of LISD's motion for summary judgment based on Garza's national origin discrimination claim.

## C. Garza's Retaliation Claim

The McDonnell Douglas burden-shifting framework also applies to Garza's unlawful retaliation claim because he has not provided direct evidence of retaliation. Turner, 476 F.3d at 348 (citation omitted). Garza must demonstrate a prima facie case of retaliation by showing that: (1) he "engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." Id. (citation omitted).

Garza contends that he engaged in protected activity by making a presentation to the LISD Board of Directors. After reviewing the transcript of Garza's statement at the LISD Board of Directors meeting, we agree with the district court's determination that Garza did not engage in protected activity at that time. The statement was a general complaint regarding the current principal and the manner in which the school functioned, but Garza did not once state that there were issues of racial or national origin discrimination. Garza used the word discrimination in his introductory paragraph, but a review of the entire transcript makes clear that he was providing complaints regarding the functioning of the school generally.

It is undisputed that Garza engaged in a protected activity by filing a complaint with the EEOC. Garza's brief, however, does not allege that any adverse employment actions occurred after he filed his complaint with the EEOC. An adverse employment action is any action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007). Instead, Garza outlines numerous incidents of retaliation he suffered as a result of his presentation to the LISD Board of Directors, and after becoming "[c]onfident that the district was not going to protect [him], he made contact with [the] Texas Commission of Human Rights." Garza's brief does not allege that he was retaliated against after filing his charge with the EEOC.

Assuming, however, that some of the incidents of retaliation recounted by Garza continued to occur after Garza filed his charge of discrimination with the EEOC, this Court finds that they do not constitute adverse employment actions. Garza stated that he was retaliated against because (1) meetings were conducted in a biased, unprofessional, and hostile fashion; (2) meetings were called to blame him for the actions of the district including the loss of VMT's buildings; (3) most of the staff stopped talking to him, acknowledging his presence, or displaying basic morning and afternoon courtesy greetings; (4) school staff would scorn his students outside of his classroom; (5) the administration would give inaccurate information to students about him and would tell others that Garza was not to be liked; (6) the Academic department suspended some of his programs; (7) students were allowed to eat lunch and breakfast in his classroom, leaving a mess; (8) his end of semester programs lacked attendance and support; (9) he was prevented from holding fund-raising activities while other colleagues were able to do so; (10) janitors neglected to clean his classroom; (11) staff members attempted to persuade the principal to cancel the Hispanic Festival because he was the co-coordinator and master of ceremonies; (12) custodians handled the United States flag inappropriately; (13) safety officers failed to observe safety issues; (14) steel chairs in his classroom were replaced with plastic ones while other academic colleagues had cushioned chairs in their classrooms; and (15) staff addressed him with sarcasm. A review of previous cases decided by this Court demonstrates that the incidents of retaliation described by Garza do not reach the level of an adverse employment action. See, e.g., Peace v. Harvey, 207 F. App'x. 366, 368 (5th Cir. 2006) (holding that a plaintiff did not suffer an adverse employment action after she (1) received a note detailing leave approval procedures, (2) was not provided a designated seat at a ceremony, (3) was assigned "menial and degrading work," (4) was told she could no longer park in her assigned space, (5) was yelled at by a supervisor, and (6) was told to move out of her office); McCullough v. Kirkum, 212 F. App'x 281, 285 (5th Cir. 2006)

(holding that (1) comments by unnamed employees, (2) a transfer to a different division, and (3) relocating an employee from one desk to another did not rise to the level of an adverse employment action); Grice v. FMC Techs. Inc., 216 F. App'x 401-404 (5th Cir. 2007) (holding that an adverse employment action did not take place after finding that the employer (1) watched the plaintiff closely, (2) accused the plaintiff of forgery, (3) falsified an incident report to place blame on the plaintiff, and (4) did not allow the plaintiff to be a step-up lead in the absence of the Lead Assembler).

Garza fails to demonstrate a prima facie case of retaliation, and we AFFIRM the district court's grant of LISD's motion for summary judgment based on Garza's retaliation claim.

## III. OTHER ISSUES RAISED BY GARZA ON APPEAL

Garza presents several other issues on appeal: (1) whether the case lasted too long because the district court allowed a number of procedural irregularities and extensions, (2) whether the court erroneously allowed LISD to admit a document filed forty-six days late, (3) whether LISD distorted facts to the court with regards to the filing of the parties' Joint Pretrial Order, (4) whether the court's integrity was placed at risk when the judge referred to LISD's attorney by name, (5) whether LISD engaged in improper conduct by taking depositions and not notifying the opposing party, (6) whether the court's integrity was placed at risk by making a comment in a local newspaper about corruption among South Texas police forces, and (7) whether the court misled Garza to believe that the parties were heading toward a trial and not a grant of summary judgment, thereby denying Garza due process.

Issue (1) fails. District court judges have broad discretion in managing the docket. Sims v. ANR Freight Sys., 77 F.3d 846, 849 (5th Cir. 1996). "Speed is necessary, and the limited capabilities of the judicial system certainly should be considered in determining whether to impose limits on the introduction of

evidence and the length of trial. However, such considerations must be addressed with a cautious respect for the requirements necessary to achieve a fair trial."

Under Federal Rule of Civil Procedure ("Rule") 61, issue (2) fails. Rule 61 states:

> Unless justice requires otherwise, no error in admitting or excluding evidence — or any other error by the court or a party — is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

A review of the record does not demonstrate that the length of the proceedings or the court's decision to allow LISD to file late documents affected Garza's substantial rights. Issues (1) and (2) are DENIED.

Issues (3)-(7) are presented for the first time on appeal. Generally, arguments presented for the first time on appeal will not be considered. Holiday Inn, Inc. v. C. H. Alberding, 683 F.2d 931, 933-34 (5th Cir. 1982). "In the absence of exceptional circumstances where a miscarriage of justice would result, a condition not present here, questions that were not presented to or passed on by the trial court will not be considered on appeal." D. H. Overmyer Co. v. Loflin, 440 F.2d 1213, 1215 (5th Cir. 1971). Even assuming arguendo that issues (3)-(7) present pure issues of law, they do not present "exceptional circumstances" as required by this Court's precedent.

## IV. CONCLUSION

For the foregoing reasons, the district court's grant of LSID's motion for summary judgment is AFFIRMED.