# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 24, 2010

No. 09-20714
Summary Calendar

Lyle W. Cayce
Clerk

PINKIE E. LYLES,

Plaintiff-Appellant,

v.

TEXAS ALCOHOL BEVERAGE COMMISSION,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas,
USDC No. 4:08-CV-01648

Before BENAVIDES, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Pinkie E. Lyles appeals the district court's grant of summary judgment in favor of the Defendant-Appellee, Texas Alcohol Beverage Commission ("TABC"). For the reasons discussed in greater detail below, we find that the district court did not err when it granted TABC's motions for summary judgment on Lyles's Title VII race discrimination, race

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20714

harassment/hostile work environment, and retaliation claims.[1]  Accordingly, we AFFIRM the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

TABC hired Lyles, an African-American female, on May 1, 2007, to perform work as the legal secretary for its Houston office.  Almost immediately, Lyles began to have problems with one of her supervising attorneys, Ramona Perry, also an African-American female.  According to Lyles, Perry subjected her to unrelenting verbal and non-verbal abuse through direct and indirect comments and criticisms; confrontational and threatening beratings; and open ridicule in front of fellow employees.  The alleged harassment came to a head in September.  Lyles describes the encounter as follows:

> On September 10, 2007, Plaintiff attended a meeting and decided to express her dissatisfaction with the way (Perry) was treating her. (Perry) with aggression verbally attacked Plaintiff and she became nervous, afraid and tearful and could not recount all that she wanted to say. (Perry) began yelling, humiliating and belittling Plaintiff and stated "I will not work with her . . . . I do not want you here," and expressed that she had told this to others whom Plaintiff also believed to be management. The demeanor of (Perry) at that time was such that it frightened Plaintiff and she feared a possible physical attack.

Following the September 10 incident, Lyles filed a verbal and written complaint against Perry with TABC's Office of Professional Responsibility.  Lyles's complaint discussed Perry's "non-professional" and abusive conduct—but noticeably, the complaint not contain any explicit or implicit allegation that Perry's hostile and harassing conduct was race-based.

---

[1] Title VII prohibits an employer from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual ... because of such individual's race, ... or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006).

No. 09-20714

On September 13, 2007, TABC terminated Lyles for allegedly poor job performance and behavioral issues.  On October 4, 2007, Lyles filed a charge of "race" and "color" discrimination against TABC with the Texas Workforce Commission Civil Rights Division.  On October 10, 2007, Lyles filed a similar charge with the Equal Employment Opportunity Commission ("EEOC").  After exhausting her administrative remedies, Lyles filed the instant action, alleging race discrimination against TABC on May 23, 2008.  On March 11, 2009, she filed her "Comprehensive Amended Complaint" asserting a race discrimination claim, a Texas Labor Code violation, a racially hostile work environment claim, and claim for retaliation.  TABC filed two separate motions for summary judgment (one for judgment on the original complaint, and another for judgment on Lyles's Comprehensive Amended Complaint).

On May 20, 2009, the district court granted TABC's initial motion for summary judgment regarding Lyles's race discrimination claim, and on October 7, 2009, the district court granted TABC's second motion for summary judgment—granting the defendant judgment on all three of the plaintiff's remaining claims.[2]  Lyles's timely filed the instant appeal.

### ANALYSIS

"This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Allen v. McWane, Inc.*, 593 F.3d 449, 450 (5th Cir. 2010).  Summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show

---

[2] In granting summary judgment against the plaintiff on her Title VII claims, the district court also concluded that it could not reach the merits on the plaintiff's Texas Labor Code claim (specifically under § 21.010) that she was denied the New Employee Orientation Training by TABC within 30 days of her hiring—as required by statute.  The district court found that pursuant to the Eleventh Amendment, TABC was immune from Lyles's Texas Labor Code claim in federal court.  Lyles does not appeal this aspect of the district court's decision, and as a result, we do not reach a decision regarding the district court's dismissal of her Texas Labor Code claim.

3

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Harvill v. Westward Commc'n, L.L.C.*, 433 F.3d 428, 433 (5th Cir. 2005) (quotation marks and citation omitted).

Lyles is proceeding *pro se.* Consequently, in considering the issues that Lyles has raised on appeal, we note that the Court applies "less stringent standards to parties proceeding *pro se* than to parties represented by counsel and liberally construe[s] the briefs of *pro se* litigants." *Grant v. Cuellari*, 59 F.3d 523, 524 (5th Cir. 1995).

## I.    LYLES'S RACE DISCRIMINATION CLAIM

On appeal, Lyles contends that the district court erred in granting summary judgment on her race discrimination claim. She claims that the district court failed to consider the "totality of the circumstances" and "draw all necessary inferences in the light most favorable to" her. Our review of the record, however, reveals that the district court was correct to grant summary judgment in favor of the defendant. Lyles's race discrimination claim did not survive TABC's motion for summary judgment because Lyles failed to establish a prima facie case of discriminatory discharge.

"To establish a prima facie case of employment discrimination [Lyles] must establish that [s]he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, . . . that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). In the present case, Lyles, an African-American, is a member of a protected class. Further, TABC concedes that Lyles was qualified for the position of legal secretary and that she was discharged. Lyles, however, cannot prove the fourth element: that she was

replaced by a person outside the protected class, or in the case of a disparate treatment claim, that others similarly situated, but outside the protected class, were treated more favorably.

In this regard, the evidence in the record squarely supports the district court's decision. First, TABC offered uncontested evidence (in the form of an affidavit by Lou Bright, General Counsel for TABC) that "after Lyles was terminated, an African-American female was hired for the position." Furthermore, Lyles has offered no evidence that she was treated differently than other non-protected class members similarly situated to her. Because Lyles has not demonstrated that she was replaced by someone outside of her protected class, nor has she put forth any evidence to show that others similarly situated, but outside the protected class, were treated more favorably, Lyles has failed to present a prima facie case.

Accordingly, since Lyles could not establish a prima facie case of race discrimination, the district court was correct to grant summary judgment in favor of the defendant.

## II.    LYLES'S HOSTILE WORK ENVIRONMENT CLAIM

Lyles also challenges the district court's grant of summary judgment on her hostile work environment claim. In order to establish a hostile work environment claim, Lyles must demonstrate that (1) she is a member of a protected class, (2) she suffered unwelcome harassment, (3) the harassment was based on race, (4) the harassment affected her job, and (5) the employer was responsible. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations omitted). In the present

case, however, there is insufficient evidence to conclude that the harassment Lyles suffered was based on race.

Perry's statements alone do not demonstrate racial animus. It is true that the evidence indicates that Perry's conduct in the office was quite abrasive—if not abusive. Lyles submitted evidence to demonstrate that Perry yelled comments such as: "I will not work with her" and "I do not want you here." This evidence, however, fails to provide an adequate explanation as to how Perry's conduct could reasonably be considered race-based. Lyles states that Perry "was of the opinion and or belief that Plaintiff's demeanor was that of a Caucasian. . . (g)iven the fact that Plaintiff spent several years in a corporate environment, lived in a suburban small town environment, used her middle name rather than her given name and chose to speak English in its proper content rather than current day casual dialect." Lyles's own personal beliefs regarding Perry's opinions of Lyles, however, cannot import racial animus into Perry's own individual conduct. This Court "has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey*, 286 F.3d at 269.

With no objective evidence in the record to substantiate Lyles's opinion that Perry's conduct was race-based, we conclude that the district court was correct to award summary judgment in favor of TABC on Lyles's hostile work environment claim.

### III.  LYLES'S RETALIATION CLAIM

Lyles accuses TABC of retaliating against her for lodging a complaint with its internal Office of Professional Responsibility ("OPR"). "To establish a prima facie retaliation claim, [Lyles] must prove that: (1) she engaged in an activity that Title VII protects; (2) [TABC] carried out an adverse employment action; and (3) a causal nexus exists between her protected activity and [TABC's]

adverse action." *Harvill*, 433 F.3d at 440. In the present case, Lyles never established a prima facie case for her retaliation claim since she never engaged in an activity that Title VII protects.

Under Title VII, an employee has engaged in protected activity if she has "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Lyles's complaint before the OPR, however, did not oppose any unlawful employment practice pursuant to Title VII because her complaint did not contain any explicit or implicit allegation that Perry's hostile and harassing conduct was race-based.

Since Lyles' complaint did not oppose or protest racial discrimination or any other unlawful practice under Title VII, she did not, prior to her termination, engage in a protected activity. Accordingly, the district court was correct to conclude that Lyles had failed to put forth a prima facie case of retaliation.

## CONCLUSION

For the aforementioned reasons, we AFFIRM the judgment of the district court.