# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 15, 2012

No. 12-10334
Summary Calendar

Lyle W. Cayce
Clerk

FAYERENE GIBSON

Plaintiff-Appellant

v.

VERIZON SERVICES ORGANIZATION, INC.

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
3:09-CV-02087

Before WIENER, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Fayerene Gibson ("Gibson"), an African-American woman, brought suit against Defendant-Appellee Verizon Services Organization, Inc. ("Verizon") for violations of Title VII, alleging sex- and race-based hostile work environment, sex and race discrimination in her termination, and retaliation. The district court granted summary judgment to Verizon on all claims. Gibson here appeals. We affirm the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10334

## FACTS AND PROCEDURAL BACKGROUND

Gibson began employment with Verizon on May 17, 2004, and was terminated May 15, 2009. While an employee of Verizon, Gibson alleges that she suffered numerous discriminatory actions based on her race and gender which caused a hostile work environment, including:

1. Around 2006, Neil Fettig ("Fettig"), a coworker, left balled up pieces of paper on Gibson's desk with remarks such as "you know it all" or "she just thinks she's so smart" and would not help her when she asked for assistance;

2. Around July or August 2007, Fettig lunged for a remote control while Gibson was monitoring a television show;

3. Gibson states that Fettig had a history of bullying women in the workplace;

4. Sometime between June and September 2008, in response to a request for assistance from Gibson, Fettig yelled, "You're the smart one," tried to grab Gibson, slung papers off his own desk, flung items off of his shelf, kicked a trash can and "busted through 3 sets of double doors" on his way to a balcony;

5. Around October 2008, in response to a question from Gibson, Fettig began yelling, screaming, pushing, and throwing things;

6. Nellie Lancaster ("Lancaster"), another coworker and a friend of Fettig's, kicked Gibson's desk three times;

7. Scott McDonald ("McDonald"), another coworker, said "Greens for everybody" when President Obama was elected in November 2008, in reference to collard greens.

In response to these actions, Gibson made several complaints to Verizon employees: Derek Givens, her immediate supervisor; Ken Longstreet, her manager; her former manager Mary Sanders; and Human Resources member

2

No. 12-10334

Sharon Roberts, with the last occurring on November 6, 2008. She was terminated on May 15, 2009. She filed a charge with the EEOC on August 3, 2009. The EEOC dismissed Gibson's charge and issued her a right-to-sue letter on August 10, 2009.

Gibson filed suit in the district court on November 3, 2009, alleging that she was subjected to a sex- and race-based hostile work environment by Fettig, Lancaster and McDonald, and that she was terminated for discriminatory reasons because of race and gender and in retaliation for complaining about the acts described above. After discovery, Verizon moved for summary judgment on all claims.

The district court granted summary judgment to Verizon in a thorough opinion, finding that Gibson had failed to produce adequate summary judgment evidence to show that the alleged harassing actions were based on her sex or race, or that her termination was discriminatory or in retaliation for her complaints.

## DISCUSSION

This court reviews a district court's order granting summary judgment *de novo*. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 478 (5th Cir. 2008); *LeMaire v. Louisiana Dept. of Transp. & Dev.*, 480 F.3d 383, 386-87 (5th Cir. 2007). Summary judgment is appropriate when, after considering the pleadings, discovery, and affidavits, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Lemaire*, 480 F.3d at 387; Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a summary judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant. *LeMaire*, 480 F.3d at 387. However, to avoid summary judgment, Gibson "must provide evidence that

No. 12-10334

raises a genuine issue of material fact concerning each element of her prima facie case." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989). She must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *LeMaire*, 480 F.3d at 387.

## A.  Hostile Work Environment

Gibson first argues that the district court erred in granting summary judgment to Verizon on her claim of sex- and race-based hostile work environment. To establish that she was subjected to a hostile work environment by coworkers in violation of Title VII, Gibson must show: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). For harassment on the basis of a protected characteristic to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 268 (quoting *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993)). In determining whether a hostile work environment exists, courts consider the "totality of the circumstances," including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or " a mere offensive utterance," and whether it interferes with the employee's work performance. *Id.*

We agree with the district court that Gibson fails to produce any summary judgment evidence, beyond her own subjective belief, that any of Fettig's conduct was based on sex or race. This court's case law is clear that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. *Ramsey*,

4

286 F.3d at 269 (quotation omitted). On appeal, Gibson points to no specific evidence that could support an inference that Fettig's actions–which form the bulk of her hostile work environment allegations–were based on her race or gender. Though she alleges that Fettig had a history of bullying women in the workplace, she provides nothing to support this conclusory statement beyond her own belief, such as complaints made by other women or any evidence of his treatment of other women.

The only conduct that Gibson has alleged that she can show has a nexus to her race or gender is McDonald's "Greens for everybody" comment the night of President Obama's election, an obviously racially-tinged statement. While Gibson correctly argues that courts should not disaggregate and separately analyze incidents that are alleged to constitute a hostile work environment, but should consider the totality of the circumstances, McDonald's racial comment, made by a different employee during a different incident at a different time, is not a sufficient basis to impute a similar racial intent to Fettig's separate, unrelated actions and infer that all the conduct was based on race. *Cf. EEOC v. WC&M Enterprises, Inc.*, 496 F.3d 393, 398-99 (5th Cir. 2007) (where alleged harasser engaged in a pattern of harassment based explicitly on religion or national origin, inference could be drawn that one incident in which same harasser did not specifically mention a protected characteristic was still based on religion or national origin). And considered alone, this single race-based comment is legally insufficient to rise to the level of "severe or pervasive," as is required to make a prima facie case of hostile work environment. *See Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (African-American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive), *abrogated on other grounds, Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)

(plaintiff presented sufficient evidence from which a jury could find severe or pervasive harassment where plaintiff was subjected to offensive, sex-based comments two to three times per week).

Because Gibson fails to produce any summary judgment evidence supporting an inference that Fettig's actions were race- or gender-based, we need not reach and do not decide any further issues concerning her hostile work environment claim, such as whether the conduct alleged is sufficiently "severe or pervasive" to support a claim of hostile work environment, or whether Verizon took sufficient remedial steps in response to Gibson's complaints.

## B. Discrimination in Termination

Gibson's next claim is that the district court erred in granting summary judgment to Verizon on her claim of discriminatory termination. Initially, Gibson must establish a prima facie case of discrimination by proving that she was: (1) a member of a protected group; (2) qualified for the position; (3) suffered some adverse employment action; and (4) was treated less favorably than a similarly situated employee outside the protected class or was otherwise terminated because of a protected characteristic. *See Pratt v. City of Houston, Tex.,* 247 F.3d 601, 606 n.2 (5th Cir. 2001); *Rutherford, v. Harris County, Tex.*, 197 F.3d 173, 179 (5th Cir. 1999). What is required to state a prima facie case under Title VII is sufficient evidence that an adverse action was taken against the plaintiff "under circumstances which give rise to an inference of discrimination." *See Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). Once the plaintiff makes a prima facie case, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the employment action. *Pratt*, 247 F.3d at 606. If the employer does so, Gibson must offer sufficient evidence to create an issue of material fact that either: (1) Verizon's stated reason is not genuine, but is a pretext for discrimination; or (2) the decision was based on "mixed motives," and Verizon's reason, while true, is

6

only one of the reasons for its conduct, and another "motivating factor" is Gibson's race or gender. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Verizon offered evidence that Gibson was terminated as part of a reduction-in-force along with two other employees in her workgroup (including McDonald), after her supervisors used a skills matrix to score her and her coworkers in various categories of certain knowledge and skills, pursuant to which she received the lowest score.

We agree with the district court that Gibson has failed to produce adequate summary judgment evidence, beyond her personal belief, that she was treated less favorably than similarly situated employees outside her protected groups and has not pointed to any other facts sufficient to raise an inference of discrimination. Though Gibson raises allegations that her supervisors generally did not praise her for good performance but praised men, did not discipline a male employee in one instance where he should have been disciplined (though she does not allege she was disciplined for similar conduct, that men were regularly not disciplined where they should have been, or that women were regularly disciplined differently than men), that she received a low performance review in 2008 which her manager later told her should not have been that low, and that her manager failed to attend a retirement party she organized for African-American colleagues, these facts are not sufficient to create an issue of material fact as to whether her termination was discriminatory. Most of Gibson's allegations do not even allege differential treatment, and she connects none of them to her termination. Further, at the time of her termination, Verizon also terminated two other people in her workgroup, and she does not provide any evidence that any of the three were treated differently based on gender or race. Thus, she has failed to raise a genuine issue of material fact on the fourth element of the prima facie case.

No. 12-10334

We further agree with the district court that even if Gibson had produced sufficient evidence to shift the burden to Verizon to provide a non-discriminatory explanation, she produced no evidence sufficient to overcome Verizon's legitimate, non-discriminatory explanation that she was fired as part of a reduction-in-force and show that Verizon's decision was either a pretext or was based on mixed motives. Though Gibson argues that Verizon had mixed motives in terminating her, she provides no evidence that could support such a finding, beyond her own belief that her skills matrix score should have been higher. Though she claims she had a conversation in 2008 with her second line supervisor about an earlier poor performance review, in which he told her she should not have received such a low score, she points to no specific evidence that would support an inference that the later skills matrix was done with discriminatory intent or that discrimination was the real reason or one of the reasons for her termination. Gibson's reliance upon assertions of a factual dispute, unsupported by specific evidence that would create a genuine issue of fact, is not enough to avoid summary judgment.

## C. Retaliation

Gibson last claims that the district court erred in granting summary judgment to Verizon on her claim of retaliation. She claims that her termination was the result of retaliation for her complaints of harassment. To establish a prima facie case of retaliation, Gibson must show that: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). The burden then shifts to the employer to show a legitimate, non-discriminatory reason for the adverse action, and if it does so, the plaintiff must show that the proffered reason was a pretext or that the employer acted with mixed motives. *See Rachid*, 376 F.3d at 312.

8

No. 12-10334

The first two elements are not disputed; Gibson complained of harassment to managers, and she was terminated.  However, we agree with the district court that Gibson failed to produce any evidence showing a causal link between her complaints, the last of which occurred in November 2008, and her termination seven months later.  The only evidence that Gibson points to on appeal to show either a causal link, or that Verizon's reason was a pretext or that it acted with mixed motives, is the temporal proximity of the events and her own testimony that she heard "a rumor" she was going to be laid off because of her complaints.  Though temporal proximity alone may support an inference of retaliation, in those circumstances the proximity must be very close.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  Seven months is too long to support an inference of a causal link, without additional evidence.  *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (finding a period of five months between the protected activity and the adverse action, standing alone, insufficient to infer retaliation).  The only other evidence Gibson provides to support a causal link is the "rumor" she heard, though she provides no details at all about this rumor, stating only that "(a) someone at Verizon (b) told another employee that Gibson was going to be laid off because she made a complaint and (c) this employee told Gibson or she overheard the comment."  She states no other facts, such as who at Verizon made the comment, when it was made, the context in which it was made, which other employee was told the rumor, who told Gibson, or whether anyone at all told her or whether she merely overheard it from some unnamed person at an unnamed time.  This unsubstantiated hearsay, which is not supported by any evidence, is not sufficient to raise an issue of material fact that Gibson's termination was retaliation.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court in all respects.