# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40171
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2015

Lyle W. Cayce
Clerk

JARRIOD SCOTT,

Plaintiff–Appellant,

v.

WEBER AIRCRAFT,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:11-CV-728

Before SMITH, WIENER, and ELROD, Circuit Judges.

PER CURIAM:*

Following his termination by Weber Aircraft (Weber), Jarriod Scott brought this lawsuit alleging racial discrimination, retaliation, hostile work environment, negligence, defamation, and breach of contract. The district court granted summary judgment to Weber and Scott appealed. We hold that the district court correctly granted summary judgment for Weber on each of Scott's claims. The judgment of the district court is AFFIRMED.

---

* Pursuant to Fifth Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Cir. R. 47.5.4.

No. 14-40171

## I.

We review the district court's grant of summary judgment *de novo*. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All facts and inferences are construed in the light most favorable to the nonmoving party. *Dillon*, 596 F.3d at 266.

## II.

The magistrate judge's report and recommendation provides a full account of the facts. The district court adopted the findings and conclusions of the magistrate judge as the findings and conclusions of the district court. Scott was employed as an assembler by Weber, an aircraft seat manufacturer, from 2005 until he was terminated in 2011. His employment and eventual termination were subject to a collective bargaining agreement (CBA) negotiated between Weber and the General Warehousemen and Helpers, Local 767 (Union).

According to Scott, who is African-American, in 2006 he observed a white noose constructed of towels hanging on the end of one of the assembly-line machines. After three days, Scott brought the noose to the attention of his supervisor and it was taken down. In 2010, Scott became aware of a third-party publication on Weber property containing the "n-word." Scott reported this and met with his Union representative and the Human Resources (HR) Manager, Elizabeth Hutchon, that same day. Following this meeting, Hutchon e-mailed all Weber supervisors, reiterating the policy that no third-party materials were permitted to be distributed on Weber property without prior approval by Weber. Scott alleges that after this report, members of management and key Weber employees began conducting surveillance of Scott.

2

No. 14-40171

Scott contends that in March 2011, a car was driven at him in the Weber parking lot and "grazed" him as he extended his hands to push away from the vehicle. Scott did not know the driver. Scott reported this incident to HR personnel at Weber, who then called the police. Scott provided Hutchon with the license plate of the vehicle and Hutchon provided Scott with the identity of the employee who owned the vehicle so that Scott could file an insurance claim. Scott also filed a worker's compensation claim arising from injuries from this incident. That claim was denied based on a lack of evidence of the incident and a lack of evidence of any injury.

Scott also alleges that a white Weber employee videotaped or photographed Scott in the parking lot. According to Scott, other employees began driving in front of and behind him in the parking lot, and at one point a different unidentified Weber employee pointed his finger at Scott "like he was fixing to pull a trigger."

In August 2010, a female employee reported that Scott had been staring at her and had touched her backside. In March 2011, another female employee reported that Scott had been harassing her for the past year by pulling up to her vehicle in the parking lot and staring at her. In April 2011, a female employee reported to HR that Scott had inquired with her about "that b---h," in reference to another female employee. Around the same time, a male employee reported that Scott had stared at him on multiple occasions and another male employee reported that Scott had stared at him while the employee was using the restroom.

The following day, Scott was issued a formal warning for intimidating and improper conduct. Scott acknowledged that he received the warning. Several days later, Scott again reported that he had almost been struck by a car in the parking lot. During the subsequent meeting with HR, Scott shouted and looked directly at Hutchon when using the word "b---h." The following day,

No. 14-40171

two female employees reported that Scott asked them for their names in a way that made them feel targeted. The next day, Scott was fired.

Scott filed a grievance and a meeting was held. Scott contends that at that meeting, a Weber employee, Dane Coker, stated that there was a video of the 2011 incident in the parking lot that showed that Scott was not hit by a vehicle. In May 2011, Scott filed a Charge of Discrimination with the EEOC. The EEOC found insufficient evidence of a Title VII violation to sustain Scott's claim. Scott then filed this lawsuit for race-based employment discrimination, retaliation, hostile work environment, defamation, negligence, and breach of contract. The magistrate judge recommended in favor of granting summary judgment for Weber on all claims. The district court adopted the magistrate judge's report and recommendation and granted summary judgment for Weber. Scott appealed the judgment as to all claims.

### III.

On appeal, Scott raises a number of arguments, but his claims sound most clearly in retaliation. Because Scott appeals *pro se*, and for thoroughness, we, as the magistrate judge did, analyze Scott's allegations for a variety of claims. Scott argues that Weber was not entitled to summary judgment on his race discrimination claim. To prove a claim of intentional discrimination Scott must show that: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *McDonnell Douglass Corp. v. Green* 411 U.S. 792, 802 (1973)).

To meet this standard, Scott must first make a *prima facie* case of racial discrimination. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th

No. 14-40171

Cir. 2004). Weber may then articulate a legitimate, non-discriminatory reason for Scott's termination. *Id.* Scott must then "offer sufficient evidence to create a genuine issue of material fact either (1) that [Weber's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Weber's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Scott's] protected characteristic (mixed-motives alternative)." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

As explained in the magistrate judge's report and recommendation, Scott failed to make out a *prima facie* case. Scott did not identify any similarly situated employees—employees against whom complaints were made—who were treated differently than he was treated, nor did Scott allege that he was replaced by someone outside of the protected class. Moreover, even if Scott could demonstrate a *prima facie* case, Weber has articulated a valid non-discriminatory reason for his termination—Scott's staring and "intimidating" conduct toward other employees.

Scott appeals the district court's grant of summary judgment on his hostile work environment claims. To establish a claim of hostile work environment, Scott must prove that he (1) belongs to a protected class; (2) was subjected to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). As explained in the magistrate judge's report and recommendation, Scott did not meet this standard. The presence of the noose, and later the presence of the offensive publication, were isolated incidents. More importantly, Weber immediately addressed both of these incidents as soon as Weber supervisors became aware of the situations. Scott offered no

No. 14-40171

evidence that any of his other allegations, including the 2011 incident in the parking lot, were based on his race.

Scott appeals the district court's grant of summary judgment on his retaliation claims. To establish a *prima facie* case of retaliation under Title VII, Scott must show that (1) he engaged in activity protected by the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001). As explained in the magistrate judge's report and recommendation, Scott failed to establish a *prima facie* case of retaliation because he did not show a causal link between protected activity and his termination. The only events that might qualify as "protected activity" are Scott's reports regarding the noose and the offensive publication. The first report occurred five years prior to Scott's termination and the second report occurred over one year prior to Scott's termination. In addition to the protected activity being temporally distant from Scott's termination, Scott developed multiple disciplinary problems and incurred an official warning between his reports and his termination. Furthermore, even if Scott had established a *prima facie* case, he did not show that Weber's stated reasons for his termination are pretext.

Scott appeals the district court's grant of summary judgment for Weber on Scott's defamation claim. The basis of Scott's defamation claim is that during a meeting with Weber personnel, Coker, a Weber manager, stated that Coker had a video that showed that Scott was not hit by a vehicle in the parking lot, as Scott alleged. To establish a cause of action for defamation, Scott, as a private individual, must show that Weber: (1) published a statement; (2) that was defamatory; (3) while acting with negligence regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W. 2d 568, 571 (Tex. 1998). To qualify as defamatory, a statement should be derogatory,

degrading, somewhat shocking, and contain elements of disgrace. *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.– Austin 2010, no pet.) (internal citations omitted).  As explained in the magistrate judge's report and recommendation, Scott did not show that the statement was defamatory.  The statement that a video disproves Scott's claims does not have any of the characteristics of a defamatory statement.

Scott's appeal as to his negligence and breach of contract claims likewise fails.  In support of his negligence claim, Scott did not show how Weber was negligent regarding his safety in the parking lot.  In support of his breach of contract claim, Scott did not present any evidence that he had a written contract with Weber or that Weber violated any of the terms of the CBA, which governed Scott's employment.  The district court correctly granted summary judgment in favor of Weber.

The judgment of the district court is AFFIRMED.