# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30204

JOANNE STONE,

Plaintiff - Appellant

v.

LOUISIANA DEPARTMENT OF REVENUE,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-3022

Before DAVIS, DeMOSS, and ELROD, Circuit Judges.

PER CURIAM:*

Appellant Joanne Stone, proceeding *pro se*, appeals the district court's dismissal of her Title VII and state law defamation claims against Appellee Louisiana Department of Revenue. For the following reasons, we AFFIRM the district court's dismissals of Stone's discrimination and harassment claims, we REVERSE the district court's dismissals of Stone's retaliation and defamation claims, and we REMAND to the district court for further proceedings consistent with this opinion.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30204

## I.

Stone, an African American, worked as a Revenue Tax Auditor for the Louisiana Department of Revenue. She initially worked in the New Orleans office from July 2001 until August 2010. Stone then transferred to the Department's Houston office, where she was employed until her resignation in March 2012. On August 12, 2010, Stone filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging race discrimination and retaliation. She later amended her charge to include allegations of harassment based on her race. The EEOC issued Stone a right to sue letter on her claims for her discrimination, harassment, and retaliation claims. On December 12, 2012, Stone filed suit in the United States District Court, alleging constructive discharge. She amended her suit on September 12, 2013, to include allegations of racial discrimination, harassment, and retaliation.

To support her claims of discrimination and harassment, Stone alleges that her supervisor, Vendetta Lockley, intended to eliminate Stone's position within the New Orleans Department. To further this agenda, Stone asserts that Lockley began to harass Stone by questioning Stone's work performance in meeting audit targets,[1] despite Lockley having previously indicated that Stone and the employees in her group had met their audit targets. Stone also asserts that Lockley failed to give her credit for all Stone's audit hours, approved completed audit hours too late to be counted toward Stone's year-end production number, and assigned Stone to "desk audits," which she alleges had lower assets than the audits assigned to a Caucasian co-worker. She further alleges that her Caucasian co-workers were assigned as lead auditors, and a racially derogatory comment was made about African Americans.

---

[1] Employees' work included "chargeable" audit hours and non-audit hours, which were not chargeable to the office.

No. 14-30204

Stone alleges that Lockley created a hostile working environment when Lockley accused Stone of losing an audit document. Stone asserts that this accusation slowed down her transfer to Houston and reduced her telecommuting privileges. She further alleges that her telecommuting days were reduced from three days per week to one day per week due to the relationship between her former manager in New Orleans and her new manager in Houston. She asserts that Caucasian employees were granted more telecommuting privileges. Stone further alleges a hostile work environment was created when Lockley and another supervisor searched for the missing audit document in her office without Stone's permission.

In April 2011, Stone requested an out-of-state position near her home in Mobile, Alabama. Her request was denied. She renewed her request in August 2011. That request was also denied. Stone alleges the denials were based on her race because Caucasian employees were being granted similar requests. In February 2012, Stone submitted a letter of resignation, which she later withdrew. In March 2012, Stone required time off due to illness. Stone's supervisor Elsie Thomas informed her that her leave would be approved after she obtained a note from her physician, which would then be verified by human resources. Stone asserts that this constituted harassment and contributed to a hostile work environment. Stone alleges that this continued harassment ultimately led to her second resignation letter on March 26, 2012. Her final day of employment with the Department was April 9, 2012.

To support her claim of constructive discharge, Stone argues that she was forced to resign after the Department refused her requests to either continue to telecommute three days a week or permit her to conduct out-of-state audits near her home in Alabama.

On February 28, 2013, Stone filed a second EEOC charge alleging race discrimination, retaliation, constructive discharge, and harassment for the

same dates covered in her first EEOC charge. The EEOC issued a right to sue letter on the second charge, closing the investigation due to Stone's filing suit in federal court.

Before the district court, the Department filed a Motion to Dismiss and, Alternatively, Motion for Summary Judgment, alleging that Stone's claims were barred by res judicata, that Stone failed to state a prima facie case for her Title VII claims, and that Stone failed to exhaust her administrative remedies or the claims were prescribed. The parties consented to proceed before a magistrate judge. The magistrate judge declined to dismiss Stone's complaint as barred by res judicata, but granted the motion to dismiss for failing to state a claim pursuant to Rule 12(b)(6). Stone timely appealed.

## II.

## A.

The Department argues that Stone's suit is barred by res judicata. Stone filed a lawsuit against the Department in September 2012, seeking reversal of the denial of her unemployment benefits. The court dismissed the lawsuit with prejudice on Stone's own motion. The Department argues that Stone was asserting her Title VII claims in that lawsuit, citing to her discussion of her EEOC charges and the attachment of the EEOC charge to the complaint. The magistrate judge found that Stone's current suit was not barred by res judicata.

Res judicata bars the litigation of claims that were previously litigated or should have been raised in an earlier suit. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). This court reviews de novo "the res judicata effect of a prior judgment." *Id.* "Dismissal under Rule 12(b)(6) on res judicata grounds is appropriate when the elements of res judicata are apparent on the face of the pleadings." *Murray v. Gen. Servs. Admin.*, 553 F.

No. 14-30204

App'x 362, 364 (5th Cir. Jan. 2, 2014) (citing *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

There are four elements that must be met for a claim to be barred by res judicata: whether (1) "[t]he parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.*), 163 F.3d 925, 934 (5th Cir. 1999) (internal quotations and citations omitted).

It is clear from the context of the complaint in the first lawsuit that Stone was raising one claim—reversal of the denial of her unemployment benefits by a state administrative review board. While it is true that Stone discussed facts that also support her Title VII claims, and attached her EEOC charge to the complaint, her reference to the EEOC charge and its underlying facts was to counter the administrative board's finding that she was "merely dissatisfied with her employment" and was therefore deemed to have quit. Such discussion does not, as the defendants contend, establish that Stone was "clearly attempting" to litigate her Title VII claims. In fact, Stone states in her complaint that her EEOC claims were still being investigated, evidencing that she did not intend to raise specific Title VII claims.

Importantly, the only claim Stone raised a state law claim over which the federal court had no jurisdiction. A claim for unemployment benefits must be filed in the state district court of the domicile of the claimant. *See* LA. REV. STAT. ANN. § 23:1634. Because the district court did not have jurisdiction over the lawsuit, there could be no final judgment from a court of competent jurisdiction.

No. 14-30204

Because at least one element for res judicata to apply cannot be satisfied, we find that the district court did not err in denying the Department's motion to dismiss based on res judicata.

## B.

Having determined that the lawsuit underlying this appeal is not barred by res judicata, we must next determine which of Stone's claims are ripe for our review.

### 1.    Exhaustion and Timeliness of 2013 EEOC Charge

The Department argues that Stone did not exhaust her administrative remedies with respect to her 2013 EEOC charge. Specifically, the Department asserts that the 2013 EEOC charge was not perfected, as there is no evidence that a signed, verified charge was filed with the EEOC. The Department argues that the only evidence of a charge is a notice of the filing of the charge from the EEOC, which states "a copy of the perfected charge will be mailed to you once it has been received from the Charging Party." Alternatively, the Department argues that the 2013 charge was untimely as it was not filed within 300 days of the last complained of discriminatory conduct.

Stone has not produced a signed, verified charge evidencing that her 2013 charge was perfected. Instead, she produced a letter from an EEOC investigator certifying that it received a charge of discrimination on February 25, 2013, and a notice of dismissal from the EEOC, dismissing the investigation of the 2013 charge on the basis that Stone had filed a federal lawsuit.

We pretermit whether Stone perfected her 2013 EEOC charge, because even if she had, the charge was untimely. Stone was required to file an employment discrimination claim with a designated state agency or the EEOC within 300 days of the alleged unlawful employment action. *See Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)). "A claim is time barred if it is not filed within these time limits." *Id.*

Stone asserts that the filing of her 2013 charge was timely under the "continuing violations" doctrine. The continuing violation doctrine "reliev[es] a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (quoting *Messer v. Meno*, 130 F.3d 130, 134–35 (5th Cir. 1997)). The plaintiff must "show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001). Stone fails to identify any discriminatory conduct occurring later than March 31, 2012, the date of her resignation. Thus, Stone had until January 25, 2013, to timely file claims of discrimination based on her 2013 EEOC charge. Because she did not file until February 28, 2013, her 2013 discrimination charge was untimely.[2]

---

[2] Stone also argues that her claim is not time barred due to equitable tolling. Stone argues that the deadline to file her 2013 charge should be tolled due to her unsuccessful attempts to have counsel appointed by the court. The plaintiff has the burden of providing a sufficient factual basis for tolling the filing deadline. *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992). This court has applied equitable tolling when (1) a suit is pending between the parties in the incorrect forum; (2) the claimant is unaware of facts supporting her claim because the defendant intentionally concealed them; and (3) the claimant is misled by the EEOC about her rights. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003). We have also found equitable tolling excused an untimely filing "in rare and exceptional circumstances when a plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Lovett v. Barbour Intern., Inc.*, 211 F. App'x 281, 283 (5th Cir. 2006) (per curiam) (unpublished) (citation and internal quotation marks omitted). Although this list is not exhaustive, Stone has not provided any arguments or cited to any case law that would support equitable tolling.

**2.    Exhaustion of 2010 EEOC Charges**

The Department argues that Stone's complaint includes allegations not raised in her 2010 EEOC charge and therefore she did not exhaust her administrative remedies as to these allegations. In her August 2010 EEOC charge, Stone alleged race discrimination and harassment. In her November 2010 EEOC charge, she included allegations of retaliation. In her untimely 2013 EEOC charge, Stone alleged disparate treatment and/or disparate impact. In her complaint filed with the district court, Stone alleged constructive discharge for the first time.

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *Huckabay*, 142 F.3d at 239 (internal citations omitted). An employee may file a lawsuit "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983). "'[A] charging party's rights should [not] be cut off merely because [s]he fails to articulate correctly the legal conclusion emanating from his factual allegations.'" *Simmons–Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272 (5th Cir. 2013) (*quoting Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)). We must determine whether the EEOC charge "stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges". *Id.* at *2 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003); *Sanchez*, 431 F.2d at 462)).

Stone did not allege any facts in her 2010 EEOC charges that reasonably encompass her later claims for constructive discharge, disparate impact or disparate treatment. *See Pacheco v. Mineta,* 448 F.3d 783, 788–92 (5th Cir.

2006). At the time she filed her 2010 EEOC charge she was still employed with the Department. Stone also fails to identify a facially neutral Department policy or practices that was applied to her in a discriminatory way. *See Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002). She further failed to allege facts sufficient to show she suffered disparate treatment. In her EEOC charge, she states only that she saw her supervisor "react differently" by making a face when an African American co-worker arrived late and have no reaction when a Caucasian employee arrived late. In her amended charge she stated that a Caucasian co-worker was not required to quote "applicable law" when presenting audits, but Stone was. This also is insufficient to trigger an EEOC investigation and to put an employer on notice of a disparate treatment claim. *See Manning*, 332 F.3d at 878; *Sanchez*, 431 F.2d at 462.

Thus, Stone's subsequent claims fall outside "the scope of the EEOC investigation" and could not reasonably be expected to grow out of her initial charge of race discrimination and harassment. As such, Stone has failed to exhaust her administrative remedies on these later raised claims.

**C.**

Stone argues that the district court erred in granting the Department's motion to dismiss on her claims for race discrimination, harassment, and retaliation pursuant to Federal Rule of Civil Procedure 12(b)(6). We review a district court's dismissal pursuant to Rule 12(b)(6) de novo, accepting all well-pleaded facts as true and viewing all well-pleaded facts in the light most favorable to the plaintiff. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc). To survive dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the complaint must allege enough facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted). The court may not go outside the complaint, but it may consider documents attached thereto. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004). Because Stone is proceeding *pro se*, her pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (internal quotation and citations omitted).

The district court applied incorrect standards when it dismissed Stone's discrimination, harassment, and retaliation claims for failure to plead a prima facie case. Although the *McDonnell Douglas* framework governs the standard of proof at trial, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The district court, by requiring Stone "to make a showing of each prong of the prima facie test . . . at the pleading stage," improperly substituted "an 'evidentiary standard' for a 'pleading requirement.'" *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Applying *McDonnell Douglas* at the pleading stage is particularly problematic where, as here, the plaintiff alleges direct evidence of discrimination. As the Supreme Court has explained:

> [I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case. . . . It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered."

*Swierkiewicz*, 534 U.S. at 511–12.

No. 14-30204

We will address Stone's claims under the proper standard, examining whether Stone has "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007) ("[T]his court may affirm the district court's judgment on any grounds supported by the record . . . ." (internal quotation marks omitted)). Although Stone need not plead a prima facie case, she is not exempt from her obligation to "allege facts sufficient to state all the *elements* of her claim." *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008) (quoting *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006)).

### 1.    Stone's Discrimination Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e–2(a)(1). We use the shorthand term "adverse employment action" to refer to an employment decision that negatively affects the compensation, terms, conditions, or privileges of employment. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004). In the context of a racial discrimination claim, adverse employment actions involve "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram*, 361 F.3d at 282. Because an adverse employment action is an element of a racial discrimination claim, a plaintiff must allege that she suffered an adverse employment action because of racial discrimination. *See Raj*, 714 F.3d at 331.

Stone did not sufficiently allege that she suffered an adverse employment action. Stone alleges that she was denied telecommuting

11

privileges that were granted to Caucasian employees. She also alleges that she was assigned "desk audits," which have lower assets then the audits assigned to Caucasian employees. Stone further alleges that Caucasians were assigned as lead auditors. She alleges that her performance was called into question by her supervisor and that her supervisor improperly delayed approval of her audit hours, which impacted Stone's year end production numbers. Finally, Stone alleges that she was subjected to a racially derogatory remark from her supervisor.

Even under liberal reading of Stone's complaint, the only fact she alleges that could implicate an "ultimate employment decision" was that she was denied the opportunity to be a lead auditor.  However, Stone fails to allege facts suggesting that being a lead auditor was akin to being denied a promotion, would affect her compensation, or otherwise be considered a benefit rising to the level of an ultimate employment action. In fact, the entirety of her allegations about being a lead auditor is that her supervisor "once assigned the white employee, Annette Broadway as lead on the out-of-state audit even though [Stone] had more experience and time within the department."  This allegation, without more, does not provide enough factual content to state a plausible claim for relief.  Because Stone has failed to allege that she suffered an adverse employment action, she has failed to state a claim for racial discrimination.

## 2.    Stone's Harassment Claims

To state a claim for harassment based on a hostile work environment theory, a plaintiff must allege, *inter alia*, that she was harassed because of her race, affecting a condition or privilege of her employment. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). To affect a condition or privilege of employment, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Id.* (internal quotations and citations omitted). "Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).

Stone alleges that Lockley, her supervisor, created a hostile working environment by accusing Stone of losing an audit document, which had the effect of slowing Stone's transfer to Houston and reducing her telecommuting privileges. She also alleges that Lockley assigned Stone more "desk audits," which have lower assets then the audits assigned to Caucasian employees, that Lockley incorrectly called her performance into question, and that her supervisor improperly delayed approval of her audit hours, which impacted Stone's year end production numbers. She further alleges that her telecommuting days were reduced from three days per week to one day per week due to the relationship between her former manager in New Orleans and her new manager in Houston. Additionally, Stone alleges a hostile work environment was created when Lockley and another supervisor searched for the missing document in her office without Stone's permission. Finally, Stone alleges that the Department's request that she obtain a doctor's note constituted harassment.

We agree with the magistrate judge that Stone failed to allege facts that, taken as true, demonstrate that she faced harassment "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268. As such, the magistrate judge properly dismissed Stone's harassment claims.

## 3.    Stone's Retaliation Claim

"Title VII prohibits retaliation against employees who engage in protected conduct," such as filing a charge of harassment or discrimination. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). To state a claim for retaliation in violation of Title VII, the plaintiff must allege that her employer took an adverse employment action against her in retaliation for engaging in protected conduct.   Notably, the standard for establishing an adverse employment action in the retaliation context differs from the standard in the discrimination context. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66–68 (2006) (noting that the anti-retaliation provisions of Title VII are broader than the anti-discrimination provisions). For purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotations and citations omitted).   "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. Normally, "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* at 68.

The standard for adverse employment action is tied to the challenged retaliatory act, "not the underlying conduct that forms the basis of the Title VII complaint." *Id*. The majority of Stone's allegations supporting her claim for retaliation occurred prior to her filing an internal grievance[3] in May 2010 and the EEOC charge in August 2010. As such, any facts claimed as retaliation prior to May 2010 do not have "a causal connection between the protected activity and the adverse employment action." *See McCoy*, 492 F.3d at 556–57.

---

[3] The internal grievance was mitigated upon Stone's transfer to the Houston office.

14

No. 14-30204

As for events occurring after May 2010, Stone alleges that Lockley singled her out by not giving her credit for all of her audited cases, returned her audited cases too late to be counted toward Stone's end-of-the-year production numbers, delayed Stone's transfer to Houston by falsely accusing her of misplacing a form, and convinced Stone's supervisors in Houston to limit Stone's telecommuting privileges. We conclude that these actions "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68. Taking Stone's allegations as true, Lockley retaliated against Stone by hindering her professional development, impeding her physical transfer to a new office, and limiting her telecommuting privileges once she arrived in Houston. Especially in light of the less stringent standards applied to *pro se* pleadings, this is enough to state a claim for retaliation. *Cf. Burlington N.*, 548 U.S. at 69 ("[T]o retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."); *Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 285 (1st Cir. 2014) (holding that plaintiff stated claim for retaliation where employer denied her certain assignments and "subjected her to repeated unpleasant and inequitable treatment."); *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) ("[Plaintiff] suffered a materially adverse action in the form of the unfavorable performance review she received (that affected her eligibility for a merit pay increase) after she complained of racial discrimination."). Accordingly, we reverse the district court's judgment with regard to Stone's retaliation claim.

### III.

After dismissing Stone's federal claims, the district court declined to exercise supplemental jurisdiction over Stone's state law defamation claim.

No. 14-30204

Because we now reverse the dismissal of Stone's retaliation claim, we also reverse the district court's dismissal of Stone's state law claim.

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of Stone's discrimination and harassment claims, we REVERSE the district court's dismissal of Stone's retaliation claim and her state law defamation claim, and we REMAND to the district court for further proceedings consistent with this opinion.