# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 30, 2020

Lyle W. Cayce
Clerk

No. 20-10380
Summary Calendar

KIMEKA PRICE,

*Plaintiff—Appellant*,

*versus*

ANDREW WHEELER, ACTING ADMINISTRATOR, U. S.
ENVIRONMENTAL PROTECTION AGENCY,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-686

Before WIENER, SOUTHWICK, and DUNCAN, *Circuit Judges*.

WIENER, Circuit Judge:[*]

Plaintiff-Appellant Kimeka Price appeals the district court's summary judgment dismissal of her Title VII discrimination, retaliation, and harassment claims. We affirm.

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-10380

## I. BACKGROUND

Plaintiff-Appellant Kimeka Price, a female African American, was employed by the United States Environmental Protection Agency ("EPA" or "Agency") in 1996. She became an Enforcement Officer in the Hazardous Waste Enforcement Branch, Compliance Enforcement Section, Region 6. In March 2018, Price filed suit against then-EPA Administrator Scott Pruitt,[1] asserting claims of discrimination and harassment on the basis of race and gender, and retaliation under Title VII of the Civil Rights Acts of 1964.[2] Price's complaint involves factual allegations made in prior complaints filed with the Equal Employment Opportunity Commission ("EEOC") in 2010 and 2012.[3]

The instant lawsuit and underlying administrative complaints are premised on allegations of more than twenty instances of discrimination,

---

[1] Andrew Wheeler has since replaced Scott Pruitt as the Administrator of the EPA.

[2] Price also raised age discrimination claims under the Age Discrimination in Employment Act. The district court dismissed these claims for failure to exhaust administrative remedies, as neither of the underlying administrative complaints included allegations of age discrimination. Price does not challenge this conclusion and we will not address it further.

[3] Price filed EEOC Complaint No. 2010-0064-R06 on June 30, 2010 and EEOC Complaint No. 2012-7322-R06 on February 28, 2012, which were consolidated on August 21, 2012. The EEOC Administrative Judge granted summary judgment in the EPA's favor. Although Price's administrative appeal was denied, the EEOC Office of Federal Operations issued a Reconsideration Decision authorizing Price to file a civil action in federal court to review the decision. Price has also filed two EEOC complaints that are currently pending before EEOC Miami District Office.

harassment, and retalition that Price allegedly suffered while employed by the EPA.[4]

Of the myriad allegations, two specific, related instances form the crux of her claims and warrant more detailed discussion: denying sick leave on May 9, 2011, and a subsequent 14-day suspension.

On March 31, 2011, Price was informed by an EPA attorney, Sherry Wilson-Brown, that Price was scheduled to testify at a colleague's EEOC hearing at 1:00 p.m. on May 9, 2011. Her appearance had been scheduled by an order of the presiding Administrative Law Judge ("ALJ") dated March 29, 2011. On May 4, 2011, Price informed Wilson-Brown that she was unable to testify on May 9, but she did not explain why. Wilson-Brown relayed that message to the ALJ, who refused to reschedule Price's testimony and

---

[4] Price characterizes the following alleged acts as evidence of discrimination, harassment, and retaliation: (1) asking her to attend a meeting to discuss performance issues; (2) withholding of a format necessary to complete a job; (3) selecting a less-qualified non-minority to give a presentation; (4) withholding administrative assistance; (5) refusing to provide information about the prerequisites for obtaining a time-off award; (6) reassigning support staff's duties; (7) excluding her from discussions regarding a particular case; (8) cancelling her "flexiplace" work schedule; (9) adding an element concerning teamwork to the performance evaluation standard used by the Agency; (10) issuing an oral reprimand; (11) refusing to discuss a performance evaluation; (12) inequitably distributing awards among staff; (13) excluding her from various enforcement activities; (14) refusing to discuss a proposed Standard Operating Procedure; (15) denying sick leave; (16) requiring her to travel to hazardous waste sites while pregnant; (17) issuing a 14-day suspension for insubordination and absence without leave; (18) rating her as "Fully Successful" on a performance evaluation; (19) issuing a proposed removal notice; (20) interfering with her EEOC complaint; (21) denying her training opportunities; and (22) reallocating specified assignments.

informed the agency that it could be sanctioned "unless good cause is shown for her failure to appear." Gary Tidmore, Price's supervisor, sent her a memorandum ordering her to appear at the hearing unless "good cause" for her absence existed. Tidmore defined "good cause" as a "medical emergency for yourself or an immediate family member," and warned Price that failure to appear without good cause "could result in a disciplinary action ranging from written reprimand to a fourteen day suspension."

The following day, Price informed Wilson-Brown and Tidmore that she would not be available to testify on May 9 "based on medical reasons." She later clarified that she had a doctor's appointment at the time of her scheduled testimony. Tidmore responded that "a doctor appointment is not a medical emergency," and reminded Price of her obligation to appear on May 9 at 1 p.m., as the ALJ had ordered.

Price called in sick on May 9, requesting leave for the entire day. In an email, Tidmore approved Price's sick leave for that morning but denied it for the afternoon, citing Price's obligation to testify at the hearing.[5] Price did not appear at the hearing that afternoon, and Tidmore officially placed her on Absent Without Official Leave ("AWOL") status for that period of time. Price discussed the incident with her second-level supervisor, Mark Hansen, on June 8, 2011, and provided a doctor's note confirming that she had attended an appointment on May 9, 2011. On July 21, 2011, the agency suspended Price without pay for 14 days for insubordination and

---

[5] Tidmore officially denied Price leave for the afternoon on May 17, 2011, explaining that the "[e]mployee had been ordered by administrative judge and supervisor to appear the afternoon of May 9, 2011, for a hearing. Supervisor approved sick leave for the morning of May 9, 2011, but reiterated order for employee to appear at 1:00pm, as ordered by the judge."

unauthorized absence, specifically citing Price's failure to appear at the EEOC hearing.

Relevant to the instant appeal is the district court's order granting summary judgment in the EPA's favor. The district court concluded that Price had failed to establish a prima facie claim for discrimination or retaliation because (1) none of the alleged instances—save for the aforementioned 14-day suspension—constituted adverse employment actions, and (2) Price had failed to establish that she was treated differently than any similarly situated employee outside of her protected group.

The district court assumed that Price had established a prima facie case of discrimination and retaliation with respect to the 14-day suspension but concluded that Price had failed to rebut the EPA's stated legitimate, non-discriminatory, and non-retaliatory reason for imposing the suspension—namely, Price's failure "to comply with an [ALJ's] order to attend a colleague's EEOC hearing"—or to demonstrate that the proffered reason was pretextual. The district court also dismissed Price's harassment claims, concluding that none of the alleged acts were "sufficiently pervasive," threatening, or humiliating to constitute alleged harassment. The district court also commented that there was no evidence that the Agency knew or should have known about any harassment.

## II. STANDARD OF REVIEW

We review grants of summary judgment de novo, applying the same legal standard as the district court. *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 691 (5th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On review, we must consider "the evidence and inferences from the

summary judgment record . . . in the light most favorable to the nonmovant." *Minter v. Great Am. Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005).

## III. ANALYSIS

The district court granted summary judgement to the EPA with respect to Price's claims of discrimination, harassment, and retaliation; Price assigns error to each of those decisions. We consider each in turn.

### A. Discrimination

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). When, as here, a discrimination case is built on circumstantial evidence, we apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

First, a plaintiff must establish a prima facie case of discrimination with evidence that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014)). If the plaintiff establishes a prima facie case, the burden "shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). If the employer succeeds in doing so, the plaintiff can only prevail by establishing either that (1) the proffered reason is pretextual or (2) "the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected

characteristic." *Id.* at 611 (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).

The district court correctly dismissed Price's discrimination claims because, except for the 14-day suspension, none of the alleged instances of discrimination constituted an adverse employment action. An adverse employment action is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). We have consistently held that an adverse employment action is an "ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

Suspension aside, none of the allegedly discriminatory acts constitute an ultimate employment decision. *Id.* For example, Price alleges that a supervisor withheld a particular format needed to complete a task, removed specified documents from a database, failed to sign a document that she had prepared, and declined to meet with her about a particular matter. But "allegations involv[ing] administrative matters" are generally "not adverse employment actions." *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (refusing to "micromanage" an employer's administrative decisions). Neither does a loss or addition of (or change in) job responsibilities constitute an adverse action unless the change is so drastic as to constitute a functional demotion. *See Thompson*, 764 F.3d at 504 ("In certain instances, a change in or loss of job responsibilities—similar to the transfer and reassignment contexts—may be so significant and material that it rises to the level of an adverse employment action."); *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997) ("Undesirable work assignments are not adverse employment actions."). Therefore, Price's allegation that she was asked at least once to perform administrative tasks outside her job description does not further her case.

Keeping in mind that an adverse employment action must be an "ultimate employment decision," we also reject Price's contention that the decision to ask a less-experienced white male colleague to give a particular presentation was discriminatory. This is especially so in light of evidence that the presentation was organized by a different branch of the Agency and that Price could have, and had in the past, given similar presentations.

Price also contends that her supervisor's decision to rate her "Fully Successful" rather than "Outstanding," was discriminatory. Not so. Receiving a low performance evaluation does not alone constitute an adverse employment action. *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 (5th Cir. 1998). Price's supervisor explained that he rated her "Fully Successful" rather than "Outstanding" because her work was "not of exceptional quality" and did not "demonstrate the highest levels of creativity, skill, and knowledge of subject area." Although Price contends an "Outstanding" rating was warranted because of the types of cases she worked on, her subjective belief about her own performance is insufficient to demonstrate that her supervisor had a discriminatory motive in assigning her a lower rating. Further, to the extent Price alleges that no African American employees received higher ratings, she is mistaken. One African American woman received an "Outstanding" rating that same year.

Price also contends that awards were distributed in an inequitable fashion. Again, she is mistaken. Although Price received a "Time-off Award" rather than a "Superior Accomplishment Award" or a "Divisional Core Value Award," the receipt of an award is clearly not an adverse employment decision. And the Agency offered its explanation for the decision, noting that, in the view of her supervisor, Price simply did not meet the criteria for other types of awards.

Price's contention related to disciplinary measures is similarly unavailing. Although she was issued an oral reprimand, reprimands that amount to no more than criticism of an employee's work generally do not constitute adverse employment actions. *See Benningfield*, 157 F.3d at 377.

Price also contends that the agency's temporary revocation of telework privileges and denial of her requested sick leave on May 9, 2011, constituted adverse employment actions. They did not. Although this circuit has yet to conclude definitively whether the revocation of telecommuting privileges constitutes an adverse employment action, s*ee Stone v. Louisiana Dep't of Revenue*, 590 F. App'x 332, 340 (5th Cir. 2014), the instant revocation does not resemble an "ultimate employment decision." The revocation was temporary, and the Agency has provided a legitimate reason for needing Price in the office at the time.

With respect to the denial of sick leave on May 9, 2011, we have previously held, albeit in unpublished decisions, that "a single denial of leave for a specific date and time does not constitute adverse employment action." *Ogden v. Brennan*, 657 F. App'x 232, 235 (5th Cir. 2016); *McElroy v. PHM Corp.*, 622 F. App'x 388, 390 (5th Cir. 2015). Furthermore, the agency offered a reasonable explanation for the denial: Price was scheduled to testify at a colleague's EEOC hearing that same day, and the reason Price offered for requesting leave did not constitute "good cause" to defy the ALJ's order that she testify at the pre-determined time.

The 14-day suspension, on the other hand, warrants closer attention. The district court assumed, arguendo, that Price had stated a prima facie case for discrimination on the basis of the suspension. We make the same assumption. *See LeMaire v. La. Dept of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (holding that a two-day suspension without pay was an adverse employment action in the retaliation context); *see also Hypolite v. City of*

*Houston*, 493 F. App'x 597, 607 (5th Cir. 2012) (holding that "a temporary suspension without pay is an adverse employment action" in the retaliation and discrimination context).

Applying the *McDonnell Douglas* framework, we must consider whether the Agency has articulated a legitimate, non-discriminatory reason for the suspension and conclude that it has. According to the EPA, Price was suspended for (1) failing to appear at a colleague's EEOC hearing on the afternoon of May 9, 2011, without good cause and (2) being absent from work without authorization.  The failure to comply with an order to attend an administrative hearing is clearly an insubordinate act that justifies disciplinary action. The same is true for failing to come to work despite a leave request having been denied. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999) ("The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee.").

Since the EPA has articulated a legitimate, non-discriminatory reason for Price's suspension, we next question whether she has demonstrated that the EPA's reason is pretextual. She has not. *Cf. Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 365 (5th Cir. 2013) (holding that a genuine question regarding pretext existed when the plaintiff offered evidence that she had been ordered to commit the act of misconduct that her employer cited as the "legitimate" reason for denying her a promotion). Rather than challenge the underlying facts or establish evidence of pretext, Price claims that it was unreasonable for the agency to deny her leave request because she provided advanced notice of her unavailability, which was related to a medical issue. She also contends that the Agency was unreasonable because (1) the hearing lasted multiple days, (2) the ALJ had indicated great flexibility over the scheduling of witnesses, and (3) she ultimately did testify on May 12, 2011.

Price's contentions are of no moment. She was informed of her obligation to testify at the hearing more than a month before it began. When the ALJ learned that Price would not be available to testify as scheduled, he informed the Agency that "Ms. Price will be expected to appear as . . . directed unless good cause is shown for her failure to appear" and that "[a]bsent her appearance or good cause shown, the agency can be expected to be sanctioned." Price's supervisor defined good cause as a "medical emergency for yourself or an immediate family member," and denied Price's request for leave to attend a doctor's appointment related to her pregnancy. He did so on the basis that it "did not constitute good cause because the appointment was not for a medical emergency." Although Price later provided a doctor's note confirming that she had been seen on May 9, the note contains no information to suggest that Price was experiencing a medical emergency at the time.

As we have previously noted, "[i]n a case in which the employer has articulated a rational justification for [taking an adverse action against] an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult." *Chaney*, 179 F.3d at 168. This warning is apt here. Price has failed to demonstrate that the Agency's legitimate reason for the suspension was pretextual. Summary judgment was appropriate on this claim.

### B. Retaliation

The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). A plaintiff establishes a prima facie case of retaliation by adducing evidence that "(1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against

[her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556–57.

Although there is no question that Price participated in protected activities—filing complaints with the EEOC, participating in an EEOC hearing, and complaining to managers about working conditions—her retaliation claims fail for largely the same reason as do her discrimination claims: a lack of evidence that the agency took an adverse employment action against her. In contrast to a discrimination claim, an adverse employment action in the retaliation context is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Price's retaliation claims involve the same alleged incidents as do her discrimination claims. We agree with the district court that none of the acts, save for the 14-day suspension, are serious enough to meet the standard stated above.[6] Further, Price has provided no evidence—aside from her own speculation that these allegedly retaliatory incidents were causally connected to her engagement in protected activities.

Even assuming, as did the district court, that Price successfully established a prima facie case of retaliation with respect to the 14-day suspension,[7] we conclude that dismissal of the claim was warranted because

[6] We recognize that under *Burlington Northern*, the scope of prohibited conduct for the purposes of a retaliation claim is wider than for a discrimination claim. *See* 548 U.S. at 67. We nevertheless conclude that the Price's allegations fail under either standard.

[7] This is a generous assumption, as there is scant evidence that the 14-day suspension was causally connected to Price's engagement in a protected activity. Although a causal connection can be inferred from close timing between the employee's protected activity and adverse action taken against her, "once the employer offers a legitimate,

Price has failed to rebut the legitimate, non-retaliatory reason offered by the agency for the suspension. As previously noted, Price's refusal to comply with an order to appear at a colleague's EEOC hearing (and her inability to provide good cause for her absence) constituted an act of insubordination that justified disciplinary action. *See Chaney*, 179 F.3d at 167. Price has offered no evidence to suggest that this reasoning is pretextual or that she would not have been suspended "but for" her filing EEOC complaints or meeting with management to discuss working conditions. *See Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) ("[A] plaintiff must show that the adverse employment action would not have occurred 'but for' the protected activity in order to prove unlawful retaliation."). Accordingly, summary judgment rejecting this claim was accordingly justified.

### C. Harassment

A plaintiff establishes a prima facie case of harassment based on a hostile work environment by adducing evidence that "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on [her protected class]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment

---

nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *McCoy*, 492 F.3d at 562 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). As explained above, the Agency has offered a legitimate reason for the suspension that is completely unrelated to Price's administrative or work-place complaints. Price has offered no evidence that would allow a reasonable jury to concluded that the suspension was retaliatory in nature.

No. 20-10380

in question and failed to take prompt remedial action." [8] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). For harassment to "affect a term, condition, or privilege of employment," it must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). The harassment "must be both objectively and subjectively abusive." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004). The court must consider the totality of the

---

[8] The parties dispute whether Price was required to set forth evidence that the Agency knew or should have known of the harassment in question. It is true that a plaintiff need not show that the employer knew about the harassment if the claim involves the acts of a supervisor. To that extent, an employer is vicariously liable for the actions of its supervisory employees. The employer has an affirmative defense to liability or damages in this instance with proof that (1) the employer took reasonable care to prevent the harassing behavior and (2) the employee failed to take advantage of such preventative or corrective opportunities. The employer is not entitled to raise the affirmative defense, however, if the harassment takes the form of a tangible employment action. *Watts v. Kroger Co.*, 170 F.3d 505 (5th Cir. 1999). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Price has not made allegations of tangible employment action harassment, however. In fact, Price first discussed tangible employment actions in response to the EPA's motion for summary judgment, but a claim first made in such a manner is not properly before the court. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). In any event, even if Price had properly raised the issue, her claim fails because there is no evidence that she was harassed in the first place.

circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000).

Price supports her harassment claims by reference to the same incidents she uses to support her discrimination and retaliation claims. The district court concluded that Price had not been harassed because none of the incidents were severe, pervasive, ongoing, physically threatening, or humiliating, nor did they interfere with her work performance. We agree.

We do not doubt that these events might have been frustrating to Price, but she provides no evidence that they were so severe or pervasive as to alter the condition of her employment in a fashion that constitutes cognizable harassment. *Compare Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) (finding harassment with evidence that "in this workplace, many workers treated other worker profanely, cruelly, and with hostility"), *with West v. City of Houston*, 960 F.3d 736, 742 (5th Cir. 2020) (concluding that a colleague's frequently passing gas at the dinner table, sleeping in his underwear, occasionally telling racially insensitive jokes, and bringing adult magazines to work was "not severe or humiliating under the governing standards"). Moreover, nothing about the instant incidents suggests that Price was physically threatened or humiliated at work. Neither does it appear that her work was unreasonably interfered with. *Cf. Johnson v. Halstead*, 916 F.3d 410, 418 (5th Cir. 2019) (concluding that the alleged harassment interfered with plaintiff's work performance because his colleagues routinely boycotted his meetings, ignored his assignments, and bullied him).

No. 20-10380

In any event, even if Price had demonstrated that she was harassed at work, her hostile work environment claim would fail because there is no evidence that any of the incidents were motivated by her race or sex. The Agency has provided reasonable explanations for each individual incident collectively suggesting that Price's grievances were caused by professional disputes, disagreements, and misunderstandings rather than by her membership in a protected group. In the absence of such evidence, summary judgment was appropriate.

AFFIRMED.